IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FELICIA BROWN | ) |
| | ) |
| v. | ) NO. 01:06-0098 |
| | ) JUDGE CAMPBELL |
| CITY OF SPRINGHILL | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 29). For the reasons stated herein, Defendant's Motion for Summary Judgment (Docket No. 29) is GRANTED and Plaintiff's claims are dismissed.

FACTS

Plaintiff was formerly employed as a police officer with the Defendant, City of Spring Hill, Tennessee. Plaintiff has testified that she was the only African-American female employed in the Spring Hill Police Department. Docket No. 43, ¶ 3.

On December 4, 2006, Plaintiff filed this action against Defendant, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq*., for damages allegedly suffered as a result of racial, sex and age discrimination and retaliation. Docket No. 1. On February 16, 2007, Plaintiff amended her Complaint to allege state law claims for outrageous conduct, negligent infliction of emotional distress and malicious harassment. Docket No. 11.

Plaintiff first became employed with Defendant on March 5, 2001. Docket No. 38, ¶ 1. On September 10, 2004, after Plaintiff had undergone abdominal surgery, Plaintiff's physician requested that Plaintiff be reassigned to a position which did not require her to wear a utility belt. *Id*., ¶¶ 2-3.

At that time, Plaintiff was placed in the position of records clerk by then Police Chief Reggie Pope. *Id*., ¶ 4.

Former Chief Pope has testified that Plaintiff was not placed into the clerk position because of any disability or illness. Docket No. 39. He stated: "In fact she obtained this position because she was TBI certified and was a police officer." *Id*. Current Police Chief John Smith, on the other hand, has testified that it is his understanding that Plaintiff was placed in the position of records clerk "in response to the plaintiff's doctor's request for a different position." Docket No. 33, ¶ 5. It is undisputed that, while she was records clerk, Plaintiff was permitted to retain police officer salary and her police certification. Docket No. 38, ¶ 6.

It is also undisputed that when Chief Pope left and a new Police Chief was hired, Plaintiff was advised that she was no longer able to stay in the clerk position with full police pay and certification, as Chief Pope had allowed her to do. Docket No. 32-1 (Plaintiff's Deposition), p. 70. In September of 2005, Acting Police Chief McCord advised Plaintiff that she would have to make a choice whether to remain in the clerk position permanently at a lower pay rate and without her police certification or to return to her police officer status and keep her officer pay rate and certification. Docket No. 38, ¶ 8. Plaintiff agreed to return to her police officer status and keep her police pay and certification. *Id*., ¶ 9.[1]

Plaintiff claims, however, that requiring her to make this choice was discriminatory. Docket No. 11. It is undisputed that Plaintiff was replaced in the clerk position by an older, white female, who was paid a lower wage according to the clerical pay scale. Docket No. 38, ¶ 12; Docket No.

---

[1] Plaintiff returned to police officer status as a COPS officer, whose primary duty was to report to area schools for educational programs with the children. Docket No. 38, ¶ 11.

2

33, ¶ 11. Plaintiff is unaware of any person, other than herself, who has ever held the clerk position and received police officer pay rates or who has been allowed to simultaneously maintain a police certification. Docket No. 38, ¶ 10.

On September 23, 2005, a citizen filed a complaint with Defendant about Plaintiff's behavior while off-duty. Docket No. 38, ¶ 14. Plaintiff disputes the validity of the citizen's complaint, but she does not dispute that Defendant received the complaint. *Id.* On November 23, 2005, Defendant received another citizen complaint about the Plaintiff's off-duty behavior. *Id.*, ¶ 16. Again, Plaintiff disputes the citizen's version of the facts, but she does not dispute that Defendant received the complaint. *Id.*, ¶ 18.

After a police investigation of the November 23, 2005 complaint, Defendant concluded that discipline was in order for Plaintiff's use of poor judgment and lack of professionalism, and Plaintiff was suspended for five days, without pay. *Id.*, ¶¶ 19-20. Plaintiff appealed the five-day suspension and demanded a full evidentiary hearing before the Mayor and Board of Aldermen. *Id.*, ¶ 21. Defendant conducted a full evidentiary hearing at which Plaintiff was represented by counsel, and the Mayor and Board of Aldermen affirmed the five-day suspension. *Id.*, ¶ 25.

In late 2005, Plaintiff requested a new replacement duty vest from Defendant. Docket No. 38, ¶¶ 27-29. Defendant advised Plaintiff that, to receive a new duty vest, she would be required to submit to a physical exam to determine that she was physically able to wear the vest. *Id.*, ¶ 30. Defendant claims it required the exam because it did not want to place Plaintiff in the position of aggravating or injuring her pre-existing abdominal condition. *Id.* Plaintiff claims that Defendant required the exam "for no good reason." *Id.* After Plaintiff was told to get a physical exam, she submitted a letter from her personal physician which stated that Plaintiff should "refrain from using

3

any personal equipment that may aggravate the problem area." *Id*., ¶ 31; Ex. 2 to Plaintiff's Deposition (Docket No. 32). Plaintiff admits she is unaware of any other Spring Hill police officer who had submitted a letter from a physician prohibiting the use of safety equipment who was provided a new duty vest without seeing a doctor. *Id*., ¶ 34.

On January 12, 2006, Plaintiff tendered her resignation letter to Defendant, making her resignation effective on January 17, 2006. Ex. 4 to Plaintiff's Deposition (Docket No. 32). Local newspapers printed several articles about Plaintiff's appeal of her suspension and her filing of this lawsuit. Plaintiff claims these articles were retaliation against her by Defendant, but she does not know whether the City notified the press or had any control over what was printed about her. Docket No. 38, ¶ 45. Plaintiff did not file an EEOC complaint against Defendant before she resigned from employment there. Docket No. 38, ¶ 45.

With regard to her hostile work environment claim, Plaintiff alleges that several officers made sexual comments about her appearance for the two to three month period when she was allowed to wear casual clothing on Fridays in the records clerk position. Docket No. 38, ¶ 35. Once uniforms were required on Fridays, the sexually-related comments stopped. *Id*., ¶ 36. Plaintiff testified in her deposition that she did not experience a racially hostile work environment. Docket No. 32-1 (Plaintiff's Deposition), p. 169. Plaintiff claims that former Chief Pope and other officers made harassing remarks "in a joking manner" about her age. *Id*., pp. 170-171; Docket No. 38, ¶ 38. Plaintiff does not contend that she suffered an adverse employment action because of her age. Docket No. 38, ¶ 39.

4

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.*; *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. *Meyers*, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. *Hopson*, 306 F.3d at 432.

## HOSTILE WORK ENVIRONMENT

Plaintiff's claims for hostile work environment are based upon gender and age. Defendant argues that Plaintiff's hostile work environment claims were not within the scope of her EEOC charge and, therefore, the Court has no jurisdiction to hear them.

In order for this Court to have subject matter jurisdiction over Plaintiff's Title VII claims, Plaintiff must have first unsuccessfully pursued administrative relief with the EEOC. *Davis v. Sohexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998). When the facts related to the charged claim would prompt the EEOC to investigate a different, uncharged claim, however, the Plaintiff is not precluded from bringing suit on that claim. *Duggins v. Steak N' Shake, Inc.*, 195

5

F.3d 828, 832 (6th Cir. 1999). The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).

Plaintiff's EEOC charge does not specifically allege a hostile work environment, but it does include the following language: "They have made a mockery of my race and have humiliated me through the press and the city and the other officers." Ex. 6 to Plaintiff's Deposition (Docket No. 32). Plaintiff also reported to the EEOC that her efforts to seek assistance resulted in "increase (sic) retaliation and harassment." *Id.* The Court finds that, although this evidence is weak, for purposes of summary judgment, Plaintiff has sufficiently alleged facts from which the EEOC could reasonably have been expected to investigate a hostile work environment claim.

In order to establish a hostile work environment claim, Plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her protected status (in this case, age and/or gender); (4) the harassment affected a term, condition or privilege of employment; and (5) Defendant knew or should have known about the harassing conduct but failed to take reasonable care in preventing or correcting the harassing behavior. *Bailey v. USF Holland, Inc.*, 444 F.Supp.2d 831, 851 (M.D. Tenn. 2006).

Not all offensive conduct is actionable as harassment. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2283-84 (1998).[2] When the workplace is permeated with discriminatory intimidation, ridicule, and insult that

---

[2] The Supreme Court has directed courts to determine whether a working environment is sufficiently hostile or abusive by looking at all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating,

6

is sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment, it is actionable harassment under Title VII. *Bailey*, 444 F.Supp.2d at 851.

As noted above, Plaintiff's allegations concerning hostile work environment concern facts which occurred while Former Chief Reggie Pope was employed by Defendant. Chief Pope left in September of 2005. Plaintiff's THRA claims concerning hostile work environment, therefore, are barred by the one-year statute of limitations. Tenn. Code Ann. 4-21-311(d).[3]

In addition, Plaintiff has not established that the alleged acts of harassment were sufficiently pervasive or severe so as to alter the conditions of her employment and constitute a hostile working environment. Plaintiff's allegations concerning sexual comments and age-related teasing do not reflect conduct that is severe or threatening, and there is no evidence that such comments unreasonably interfered with Plaintiff's work performance. In fact, Plaintiff has admitted that she enjoyed her job entirely until the citizen's complaint was made (November 2005) and the new duty vest issue arose (late 2005). Docket No. 38, ¶ 40. For these reasons, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and THRA hostile work environment claims.[4]

## RACIAL DISCRIMINATION

---

or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Faragher*, 118 S.Ct. at 2283.

[3] Plaintiff has asserted no facts which would support her claim that the continuing violation theory applies in this case.

[4] Analysis of a hostile work environment claims is the same under both the Tennessee Human Rights Act and Title VII. *Campbell v. Florida Steel*, 919 S.W.2d 26, 31 (Tenn. 1996); *Bailey*, 444 F.Supp.2d at 851, n.11.

7

In order to establish a case of racial[5] discrimination in violation of Title VII and the THRA,[6] Plaintiff must show that: (1) she was in a protected class; (2) she was qualified for the position; (3) despite these qualifications, she was subjected to an adverse employment decision; and (4) she was replaced by someone outside of the protected class or that similarly situated non-protected employees were treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Tally v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

An "adverse employment action" is a materially adverse change in the terms or conditions of employment and must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000). To be materially adverse, a change must be of the magnitude of a termination of employment, a demotion, a decrease in salary, or a material loss of benefits. *Wills v. Pennyrile Rural Electric Cooperative Corp.*, 2008 WL 111018 at * 3 (6th Cir. Jan. 9, 2008).

To be "similarly situated" for purposes of the fourth element, comparable employees must be similarly situated in all respects; that is, they must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 728-29 (6th Cir. 2004).

Plaintiff alleges three discrete acts of discrimination. The Court will address each in turn.

RETURN FROM CLERK POSITION TO POLICE OFFICER

---

[5] Plaintiff has admitted that she did not suffer any adverse employment actions because of her age. Docket No. 38, ¶ 39.

[6] Again, Plaintiff's THRA claim is analyzed in the same fashion as her Title VII claim. *Harper v. BP Exploration & Oil Co.*, 896 F.Supp. 743, 747 (M.D. Tenn. 1995).

8

First, Plaintiff contends that she was discriminated against because of her race[7] when Defendant required her to choose between keeping the records clerk job at a lower rate of pay, with no police certification, or going back to a police officer role, with police officer pay and certification.

Defendant argues that this incident does not constitute an adverse employment action. Plaintiff's return to police officer status did not involve a loss of benefits, a decrease in salary, a demotion or termination of employment. Although Plaintiff's job responsibilities changed, the Court finds that the change to the terms and conditions of her job were not of a magnitude to be materially adverse. Thus, Plaintiff has failed to establish the third element of this claim.

In addition, Defendant contends that Plaintiff was not treated differently from similarly situated employees who are white. Although she was replaced by a white female, Plaintiff has admitted that she knows of no other person who was allowed to hold the clerk position and also receive police officer pay and maintain a police certification. Docket No. 38, ¶ 10. Plaintiff has failed to show that similarly situated employees were treated more favorably and, thus, has failed to establish the fourth element of her claim.

For these reasons, Plaintiff has failed to establish her claim for discrimination with regard to her September 2005 removal from the clerk's position, and Defendant is entitled to summary judgment on that claim.[8]

---

[7] To the extent Plaintiff claims she was discriminated against in this instance because of her gender or age, she has failed to show that she was replaced by someone outside the protected class, since she was replaced by an older female.

[8] Plaintiff's THRA claim with regard to this incident is also barred by the one-year statute of limitations. Tenn. Code Ann. § 4-21-311(d).

9

FIVE-DAY SUSPENSION

Secondly, Plaintiff claims that her five-day suspension without pay in December 2005 was racially motivated. It is undisputed that Defendant received two citizens' complaints concerning Plaintiff's off-duty behavior, one on September 23 and one on November 23, 2005.[9] Although Plaintiff's suspension was an adverse employment action, she cannot show that she was treated differently from similarly situated employees outside the protected class. Plaintiff has produced no evidence to rebut Defendant's claim that Plaintiff is the only Spring Hill police officer to receive two citizen complaints concerning off-duty behavior within a two month time frame.[10] In addition, Plaintiff's discipline regarding these actions was upheld following a full evidentiary hearing, where Plaintiff was represented by counsel, before the Mayor and Board of Aldermen.

Plaintiff argues that, in mid-2005, a white male police officer, John Smith, Jr. (no relation to Chief John Smith), was issued Orders of Protection against him for domestic violence against his wife and was never disciplined by Defendant. Docket No. 39, ¶ 8. At that time, Reggie Pope was the Police Chief. When Plaintiff was disciplined, Chief Pope was gone and John Smith was the Police Chief. Chief Smith has testified that he had no knowledge of an Order of Protection being issued to Officer John Smith, Jr. Plaintiff and John Smith, Jr. were not dealing with the same supervisor. In addition, citizen complaints, including allegations that she used her status as a police

---

[9] Because the records of these citizen complaints are not offered for the truth of the complaints, but rather for notice to Defendant, Plaintiff's objection that these records are hearsay is overruled.

[10] Defendant's Statement of Facts, ¶ 22, states "within a one-month time frame," but September 23 - November 23 is a two month time frame.

10

officer to buy beer for someone without proper identification, are different from Orders of Protection concerning domestic matters.

For these reasons, the Court finds that Plaintiff has not shown that the decision to suspend her for five days without pay, based upon two citizen complaints against her, was racially motivated. Defendant is entitled to summary judgment on this claim.

REQUEST FOR NEW DUTY VEST

Thirdly, Plaintiff claims that Defendant discriminated against her by requiring that she take a physical exam before receiving a new duty vest. As indicated above, to establish this claim, Plaintiff must show that she was subjected to an "adverse employment action" as that term has been defined in Title VII and the THRA. Plaintiff was not denied a duty vest; she was required to be examined before she could receive a new vest. The Court finds that requiring Plaintiff to have a physical exam before giving her a new police duty vest was not a materially adverse change in the terms and conditions of her employment of the magnitude of a termination of employment, a demotion, a decrease in salary, or a material loss of benefits, such as to be an adverse employment action for purposes of this claim.

Moreover, Plaintiff has failed to show that similarly situated non-protected police officers were treated differently. It is undisputed that Plaintiff's physician, on September 10, 2004, requested that Plaintiff be reassigned to a position which did not require her to wear a utility belt, because of her abdominal surgery. Docket No. 38, ¶¶ 2-3. In addition, it is undisputed that Plaintiff's physician submitted a letter to Defendant in late 2005, stating that Plaintiff should refrain from using any personal equipment that could aggravate "the problem area." Docket No. 38, ¶ 31. Plaintiff has not shown that any other Spring Hill police officer who had submitted a letter from a

11

physician prohibiting the use of safety equipment in their work was provided a new duty vest without seeing a doctor. Docket No. 38, ¶ 34.

For these reasons, Plaintiff has not sufficiently supported her claim regarding the new duty vest, and Defendant is entitled to summary judgment on that claim. Accordingly, Plaintiff's discrimination claims are dismissed.

## RETALIATION

In order to prove her retaliation claim under both the THRA and Title VII, Plaintiff must prove (1) that she engaged in an activity protected by the statute; (2) that Defendant had knowledge of her exercise of protected activity; (3) that Defendant thereafter took an employment action adverse to her; and (4) that a causal connection existed between the protected activity and the adverse employment action. *Miller v. City of Murfreesboro*, 122 S.W.3d 766, 775 (Tenn. Ct. App. 2003); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Plaintiff has stated that her claim of retaliation is based on three things: the fact that a local newspaper ran several stories about the appeal of her suspension, the vest incident, and the clerk incident. Docket No. 38, ¶ 44. The local newspaper is not a Defendant in this case, and Plaintiff admits she has no evidence that Defendant had any control over what the newspaper printed about her suspension from work or that Defendant even notified the press of the suspension. Docket No. 38, ¶ 45. Thus, Plaintiff has failed to show any culpable conduct by Defendant with regard to the newspaper articles.

With regard to the vest incident and the clerk incident, the Court has already found that Plaintiff has failed to establish that either of these incidents involved an adverse employment action. In addition, the Court notes that Plaintiff's EEOC complaint (protected activity) was filed on March

12

8, 2006, *after* both the clerk incident and the vest incident. Accordingly, Plaintiff cannot establish the required elements of a retaliation claim under the THRA or Title VII, and Defendant is entitled to summary judgment on this claim.

## STATE LAW TORT CLAIMS

Plaintiff's Amended Complaint includes state law claims for outrageous conduct, negligent infliction of emotional distress and malicious harassment. Defendant argues that Plaintiff's state law claims are barred by the applicable statutes of limitations, sovereign immunity and/or specific Tennessee case law.

The Tennessee Governmental Tort Liability Act ("TGTLA") provides that, with limited exceptions when governmental immunity is specifically removed by law, a governmental entity shall be immune from suit for any injury which may result from the exercise and discharge of any of its functions, governmental or proprietary. Tenn. Code Ann. § 29-20-201(a). The law also provides that suit against a governmental entity shall be commenced within twelve months after the cause of action arises. Tenn. Code Ann. § 29-20-305(b).

Under the TGTLA, municipal immunity is specifically removed for certain distinct causes of action. For example, the TGTLA removes liability for negligent operation of motor vehicles by governmental employees. Tenn. Code Ann. § 29-20-202(a). Moreover, the TGTLA provides a general waiver of immunity for "injuries resulting from negligent acts or omissions of governmental employees," with certain enumerated exceptions. Tenn. Code Ann. § 29-20-205.

In accordance with those enumerated exceptions, Defendant is immune from Plaintiff's claims for outrageous conduct and malicious harassment. Tenn. Code Ann. § 29-20-205(2); *Blakely*

13

*v. City of Clarksville*, 2007 WL 2258846 at \*\* 1 (6th Cir. Aug. 7, 2007). Accordingly, Defendant is entitled to summary judgment on those state law claims.

Although Section 29-20-205 of the TGTLA maintains the immunity of a governmental entity to claims of intentional infliction of emotional distress, it lifts the protection of immunity and allows a governmental entity to be sued for claims of negligent infliction of emotional distress. *Stuart v. Metropolitan Gov't of Nashville and Davidson County*, 2007 WL 2479502 at \* 6 (M.D. Tenn. Aug. 10, 2007); *Sallee v. Barrett*, 171 S.W.3d 822, 827 (Tenn. 2005).

Claims under the TGTLA, however, must be brought in the state circuit courts, and a federal court should decline to exercise jurisdiction over such claims. *Stuart* at \* 7 (citing Tenn. Code Ann. § 29-20-307 and *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). In this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by Tennessee's own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(4). *Parker v. Henderson County, Tennessee*, 450 F.Supp.2d 842, 857 (W.D. Tenn. 2006).

For these reasons, the Court, in its discretion, declines to exercise supplemental jurisdiction over this remaining state law claim. Therefore, Plaintiff's claim for negligent infliction of emotional distress is dismissed without prejudice.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's claims herein are DISMISSED. Plaintiff's claim for negligent infliction of emotional distress is dismissed without prejudice.

14

IT IS SO ORDERED.

/s/ Todd Campbell
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

15